## I. TANENBAUM SON & CO. v. DRUMBOR-BINGELL CO., Inc.

### No. 4488.

Circuit Court of Appeals, Third Circuit.
Feb. 16, 1931.

The opinions of Dickinson, District Judge, are as follows:

### Sur Trial Without a Jury.

A narrative statement introductory to the fact findings in this case may begin with the observation that the key to an understanding of the case and defense is the most elusive of things, slipping from your grasp the moment you attempt to seize it. The facts may be unraveled best by taking them up in sections.

The plaintiff and defendant entered into a contract under date of September 1, 1922. The subject-matter of the contract was the installation in the premises of the defendant of the fire extinguisher sprinkler system of

---

the plaintiff, to be paid for in the saving through reduced insurance premiums. The defendant agreed to maintain $200,000 of insurance, at agreed rates, to be placed with the plaintiff as broker for a stated term of years. Two features of the contract are pertinent. One was that the defendant would not sublet any part of the premises without obtaining a contract from the subtenant with the plaintiff of like tenor and effect with that of September 1, 1922; the other was that, if the defendant breached the contract, the plaintiff was to be paid, as liquidated damages for the breach, a sum figured at $750 per year for the remaining life of the contract.

### The Pleadings.

The plaintiff declared on the contract averring a breach by the defendant in that it had sublet to Ross Company, Inc., the greater part of the premises in question in violation of the covenant referred to whereby there became payable to the plaintiff the agreed liquidated damages in the sum of $11,250.

The defense pleaded was a denial of the breach, in that the lease to Ross Company, Inc., complained of had been made after consultation with the plaintiff and with its consent, Ross Company, Inc., having entered into a contract with the plaintiff to carry $172,000 of the insurance, the remaining $38,000 to be carried by the defendant, and that thereupon the contract of September 1, 1922 (the contract sued upon), had been formally annulled and declared at an end by an agreement in writing between plaintiff and defendant.

### The Issues.

Out of the statement of claim and the affidavit of defense, as above outlined, there clearly arose two issues, which may be formulated in the following questions of fact:

1. Did the defendant breach the contract of September 1, 1922, by subletting to Ross Company, Inc., a portion of the premises in question without procuring a contract to be made between the Ross Company and the plaintiff?

2. Was the contract of September 1, 1922, abrogated and ended by the parties to it?

Both these questions must be given an answer favorable to the plaintiff before it can have judgment.

### The Evidence.

It would work confusion to follow the evidence as introduced. It consists largely and almost wholly of the written contracts and of letters exchanged by the parties. This correspondence bears unmistakable internal evidence that it was conducted on both sides through counsel who dictated the letters of their respective clients and who were each sparring for position. What was really a very simple situation thus became so frightfully complex that it can with difficulty be disentangled, and the capable and experienced counsel themselves lost their bearings and could not find their way out of the labyrinth thus constructed. The only phrase which will aptly describe the presentation of the case and defense is that it was "an unintelligible discussion of insoluble problems." Instead of limiting the prima facie case for the plaintiff to that pleaded (as might well have been done) by putting in evidence the contract sued upon to prove the contract and the lease to the subtenant to prove the breach, thus calling upon the defendant to make out its defense, reserving the other evidence for the plaintiff to be offered in rebuttal, the plaintiff essayed to prove its case and to disprove the averments of the affidavit of defense at the same time. Hence the tangle.

We will seek to follow the proofs in the order in which they might have been presented as above outlined. This will very much clarify the fact situation. Followed in this order we have the contract and the lease to the subtenant, thus making out a prima facie case for the plaintiff.

For the defense the fact was developed that, before the defendant sublet, it informed the plaintiff that it had in view one or the other of two subtenants with whom it was negotiating. One was the well-known chain dry goods stores dealer, J. C. Penney Company, the other the Ross Company, Inc., and plaintiff was asked whether either would be satisfactory to the plaintiff. Negotiations were taken up by the plaintiff with the prospective subtenants through which it developed that the J. C. Penney Company carried its own insurance and hence would make no contract with the plaintiff. A lease was accordingly made to the Ross Company, Inc., who likewise entered into a contract with the plaintiff to carry $172,000 insurance, and the plaintiff and defendant entered into two new contracts, one for $38,000 insurance (making with the $172,000 the $200,000 insurance agreed in the agreement of September 1, 1922, to be carried), and the other an agreement that the September 1, 1922, contract was ended, the new $172,000 and $38,-

000 contracts being substituted for it. This would indicate a complete defense. A reply to it is set up by the following further fact developments. There was such a delay on the part of the defendant in the execution, or at least the delivery, of the second contract that despairing of receiving it the plaintiff declared all negotiations off and notified defendant that the plaintiff would enforce the contract of September 1, 1922. The very next day the plaintiff received the belated second contract, and thereupon notified the defendant that the contract had been received and was accepted and it would look to the Ross Company $172,000 contract and defendant's $38,000 contract in place of the $200,000 contract of September 1, 1922. This would have "closed the incident," except for the fact that the defendant came back with the assertion of its position that, the plaintiff having declared negotiations off (without the $38,000 contract), the defendant had accepted this as a refusal of the $38,000 contract, and because of this did not deem the $38,000 contract to be in force, and refused to be bound thereby. The plaintiff thereupon brought this action. As soon as it was developed that there was at least a possibility that the cause of action set up in the statement of claim was unsupported, and that the plaintiff's real cause of action might be the breach, not of the subletting, but of the refusal of the defendant to be bound by either the contract of September 1, 1922, or the $38,000 contract, the propriety of an amendment of the statement of claim was suggested by the trial judge, so that the real cause of action might be determined whether it was one or another. This was met by the plaintiff with an offer of settlement for a stated sum, which was based upon giving the defendant credit on its $200,000 contract for the $172,000 Ross Company contract with a proportionate reduction of its claim for damages. Upon the refusal of the defendant to accept the offer of settlement, the plaintiff elected not to amend. We assume this choice was made because it anticipated a plea of surprise and in reliance upon its judgment that, if it failed to prove the breach averred in its statement of claim, and thereby failed in this action, it would not be debarred thereby from bringing another action based upon a different breach or upon another contract. Whatever the reason for its course, it did elect to stand upon its pleaded cause of action, the two-fold basis of which we recapitulate as follows:

1. The contract of September 1, 1922, which we have called the $200,000 contract.

2. Its breach by the defendant subletting a portion of the premises to Ross Company, Inc., without procuring from the subtenant a contract with the plaintiff, which we have called the $172,000 contract, with

3. A claim for the liquidated damages provided for in the $200,000 contract.

### Discussion.

A discussion of the law arising out of the fact situation above outlined may well begin with an appraisal of the rights of the plaintiff at the time of the repudiation or threatened repudiation by the defendant of its $38,000 contract. The plaintiff, as we view its rights, might have taken either of two positions:

1. Accepted defendant's repudiation of its $38,000 contract and stood upon the contract of September 1, 1922.

2. Refused to accept such repudiation and stood upon the $38,000 contract.

What it did do may be thus stated. We give this statement of its position because it was so submitted to counsel at the argument and pronounced to be "Exactly right."

When the premises were sublet it was the right of the plaintiff to declare the breach and claim the liquidated damages or to permit the breach to be healed. In the latter event it had the right to dictate its own terms. The terms exacted by it were that (1) the Ross Company should execute the $172,000 contract; (2) the defendant should execute the new $38,000 contract; and (3) the $200,000 contract should be declared ended with an acknowledgment of plaintiff's continued ownership of the sprinkler system. Had these three things been done, plaintiff concedes it would then have had no rights other than those given it under the $38,000 contract. Inasmuch, however, as the defendant repudiated its $38,000 contract (after making it), the plaintiff asserts its then right to go back to the situation as it was when the defendant breached its $200,000 contract and to declare the breach and claim the liquidated damages precisely as if no negotiations for the healing of the breach had been instituted.

Upon this theory of its case plaintiff admits that it cannot recover in this action without proving the averred breach. When confronted with the fact that it has the Ross Company $172,000 contract and is thus claiming its penny with a big slice of the cake in its possession, it suggests that the court may treat the $172,000 Ross contract as a pro tanto reduction of the sum of the liquidated damages and enter judgment for the

reduced damages, which is incidentally the sum for which the plaintiff offered to accept judgment. When confronted with the other fact that the action here is upon the contract of September 1, 1922, which had been ended by the agreement of the parties to it, the position of the plaintiff, we assume to be, is that the agreement to end this $200,000 contract was based upon the $38,000 contract being substituted for it, and that the failure to provide the substitute abrogated the agreement to end the original contract, thus reviving it.

This discussion which began with a statement of plaintiff's rights may be concluded with the formulation of four fact questions, with the answers thereto, and the statement of the conclusion of law based thereon.

1. Is the action based upon the contract of September 1, 1922? The answer to this question is in the affirmative.

2. Is the averred breach that of the failure of the defendant to secure a contract to be made by the subtenant with the plaintiff? The answer to this is likewise in the affirmative.

3. Was such contract between the subtenant and the plaintiff in fact made? The answer to which is again in the affirmative.

4. Was the agreement of September 1, 1922, revoked by the agreement of the parties? The answer to this question is likewise in the affirmative.

The conclusion of law which follows these fact findings is that the plaintiff has not proved the averred breach of the contract sued upon, and hence cannot recover. This renders it unnecessary to go into the question of the continued existence of the contract in suit.

■■■ We prolong (doubtless unnecessarily) this discussion for the purpose of making comments upon two features of the case, so that it will be manifest they have not been overlooked. One is the suggestion that judgment might be entered for a reduced sum. We would be glad to adopt this course if we felt free to do so. It is in line with our own suggestion that the pleadings be amended so as to include all possible causes of action. We are far from criticizing counsel for not amending. They doubtless chose what in their judgment was the lesser evil. They are capable and experienced and had studied their case. We would unhesitatingly accept their judgment rather than the necessarily snap judgment of a trial judge. Nevertheless, we must rule the case as presented. The case as presented and the case as it would have been presented under the amended pleadings may be thus contrasted. Under the pleadings, we have a case upon the contract of September 1, 1922, breached solely by the failure to secure a contract from the subtenant. Under amended pleadings, we would have had the further breach of the September 1, 1922, contract by anticipation, based upon the repudiation by the defendant of all its obligations, and a further cause of action based upon the $38,000 contract and its like anticipated breach. Under such amended pleadings the suggested reduced judgment would or would not be entered as the evidence warranted. With one sole and only breach, evidence of other breaches would be excluded because of a variance. There is in the record some such evidence introduced without objection.

The defense, on cross-examination, went into the realm of other breaches to some extent. The attention of counsel was directed to the possible effect of this upon the case as pleaded. After that they refrained from going into the question of other breaches and objected to all such evidence offered by the plaintiff. These objections were sustained.

The allowance of a recovery now on the basis of other breaches than the one pleaded would have the practical consequence and effect of depriving the defendant of its defense (if there be any) to the charge of other breaches, because upon these the defense has not been heard.

■ The other comment is upon the fact feature that in dates the lease antedated the Ross Company contract. It is, however, also the fact that, before the lease to the subtenant was executed, the names of two prospective tenants were submitted to the plaintiff who approved of the Ross Company as a tenant and in fact made with it what we have called the $172,000 contract and received the benefit of it. It is because of this that the plaintiff expressed its willingness to accept of a judgment for reduced damages. It was after the acceptance of this latter contract that the plaintiff declared a breach of the contract. The time of the declaration of this breach has an important bearing upon the rights of the parties. The contract of September 1, 1922, contemplates a possible subletting of the premises referred to in it. It was the parting with the insured premises so as to deprive the plaintiff of the insurance feature of the contract which constituted the breach. There was no contract against subletting in itself. It was against a subletting

without the substitution of an insurance contract with the plaintiff for the contract of the defendant. If there was such substitution, there was no breach. A new contract with the defendant was not required. It remained bound to maintain the insurance contracted for. The only difference was that the sum of the insurance was in this case reduced from $200,000 to $38,000. When the lease was executed before the Ross Company contract was made, the plaintiff might possibly have declared a breach of the September 1, 1922, contract, but it could not negotiate and accept a contract with the Ross Company and thereafter declare a breach on the ground that no such contract had been made.

The question of the effect of the judgment to be entered herein upon the right of the plaintiff to bring its action for another breach of the contract of September 1, 1922, than that pleaded, or its right to bring an action upon another contract than that pleaded, to wit, the $38,000 contract, nor the other question of the right of the defendant to repudiate the latter contract, is not discussed because not before us.

### Judgment.

No formal judgment is now entered, but the parties have leave to move for judgment in favor of the defendant, with costs, and further leave to submit requests for specific findings of fact or conclusions of law, jurisdiction of the cause being retained to enter judgment and to answer such requests.

### Sur Reargument.

Counsel for plaintiff has re-emphasized a point made at the trial. We are, of course, quite in accord with the proposition that if and after the defendant had breached the contract entered into it was the right of the plaintiff to stand upon the breach or to dictate the terms upon which the breach might be healed.

It is not a little difficult to clearly state what happened. An attempt may be made in this wise: The original contract called for the carrying of fire insurance to be placed through the plaintiff. The defendant had a purchaser for the larger part of the insured premises. The original contract contemplated such a possible sale by providing that no such sale was to be made until the plaintiff had made a contract with the purchaser for the carrying of the insurance. The proposed sale was in consequence taken by the defendant to the plaintiff who thereafter made an insurance carrying contract with the new owner. The plaintiff asked further for a new contract with the defendant carrying insurance on the part of the property, the ownership of which remained in the defendant. Contracts were prepared by the plaintiff and sent to the defendant for execution. Had nothing else intervened, the whole matter would have been adjusted. There was, however, some delay before the signed contracts were returned to the plaintiff. The plaintiff, becoming peaked at this delay, notified the defendant that all the negotiations for new contracts were off, and the plaintiff would hold the defendant responsible for a breach of the original contract. In the meantime the defendant had forwarded to the plaintiff the substituted contracts. The plaintiff thereupon executed the contracts and so notified the defendant. Again, had matters remained as they thus were, there would have been no controversy between these parties. The defendant, however, after forwarding the substituted contracts, received the letter of the plaintiff declaring the contracts to be off, and afterwards, upon receipt of plaintiff's letter stating that the substituted contracts had been accepted, notified the plaintiff that, the plaintiff having declared the second contract off, the defendant refused to be bound by it. The plaintiff was thus left with the contract of the purchaser which it accepted and has since retained, receiving the benefits of it, and also with the substituted contract of the defendant by which the defendant was refusing to be bound. The original contract called in case of its breach for the payment of a stipulated sum as liquidated damages. The plaintiff asked judgment for this whole sum, notwithstanding the fact that it had and was receiving the benefits of the contract of the purchaser who was carrying insurance which represented nearly seven-eighths of the insurance which the defendant had originally agreed to carry. The parties had apparently been dealing in a frank and open manner with each other up to and including the time of the sale by the defendant of a portion of the premises. The defendant evidently thought the plaintiff had a right to be consulted concerning the sale or at least wanted to see the plaintiff taken care of by the new contract. This is evidenced by the fact that before the defendant made the sale it submitted to the plaintiff the names of two prospective purchasers according to the plaintiff the right to make an agreement with either of them as it might prefer and make the sale to that one of the prospective purchas-

ers with whom the plaintiff was able to make an agreement respecting insurance, the other prospective purchaser having refused to make any such agreement. It would look as if after this each of the parties consulted counsel because the correspondence thereafter impresses the reader with the thought that each writer was sparring for position, and this promotes the suspicion that the latter correspondence was conducted by counsel. The original contract makes manifest that the damages were liquidated upon the basis of lost commissions to the plaintiff if the insurance was not maintained through it. The plaintiff, as before stated, is now in the receipt of seven-eighths or more of such commissions, and, retaining this seven-eighths, it could not in justice ask that the defendant pay it the whole sum of the commissions for what would thus be seven-eighths twice paid for its loss.

As the trial judge viewed the rights of the plaintiff, it was that it could recover from the defendant for its breach of the second contract, or, if this second contract could not be issued, then it might recover for the value to it of the original insurance contract, less what it was receiving from the purchaser. If the contract proceeded on either, or, in the alternative, on both of these contracts, an amendment of the pleadings was required. The plaintiff, however, stood by its own theory of its cause of action, which was that the defendant had breached the original contract and had in consequence the right to recover for the liquidated damages stipulated with the further right to make a new contract with the purchaser of the premises.

We are unable to see how this cause of action can be maintained. The only breach of the original contract which could have occurred was the failure of the defendant to procure a contract satisfactory to the plaintiff from the purchaser. This the defendant did, and hence we are unable to find that it breached its contract.

We are further unable to see that a new contract was necessary between plaintiff and defendant. It was, of course, well to have one, because it made the new relations more definite, but so far as we are able to discover, the defendant having agreed to maintain $200,000 of insurance, and the purchaser having taken off of its hands $172,000 of this sum, the defendant remained liable to the plaintiff to carry $38,000 of insurance. This is what it agreed to do by the second contract. In this view of the rights of the parties, there was no breach of the contract until the defendant refused to take out this $38,000 of insurance, and, as no such breach is averred, none can be found.

The motion for a reargument is denied, and leave to enter judgment before granted is renewed.

Mayer L. Halff, of New York City, Carr & Krauss, of Philadelphia, Pa., and Lehman, Hamilton & Castellucci, of Bethlehem, Pa., for appellant.

R. C. Mauch, of Bethlehem, Pa., for appellee.

Before DAVIS, Circuit Judge, and THOMPSON and JOHNSON, District Judges.

PER CURIAM.

The judgment in this case is affirmed on the opinion of Judge Dickinson in the District Court.